**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Compass Financial Partners, L.L.C., a limited liability company,<br><br>            Plaintiff,<br><br>    vs.<br><br>Unlimited Holdings, Inc., a Nevada corporation,<br><br>            Defendant. | No. CV 07-1964-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendant Unlimited Holdings, Inc.'s ("UHI") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. #12]. After reviewing the pleadings and finding oral argument to be unnecessary, the Court issues the following Order.

**I.     BACKGROUND**

On September 7, 2007, Plaintiff Compass Financial Partners, L.L.C. ("Plaintiff"), a Delaware limited liability company, filed the instant Complaint against Defendant UHI ("Defendant"), a Nevada corporation, in the Maricopa County Superior Court, alleging Breach of Contract/Guaranty. [Dkt. #1-2]. On October 12, 2007, Defendant invoked this Court's jurisdiction based on diversity of citizenship and filed a Notice of Removal to the federal district court. [Dkt. #1].

1    Plaintiff's Complaint alleges, and Defendant agrees, that a group of lenders
2 represented by USA Commercial Mortgage Company ("Lender") as attorney-in-fact, made
3 a loan (the "Loan") to Cornman Toltec, LLC ("Borrower") pursuant to a loan agreement
4 dated June 24, 2005 (the "Loan Agreement"). [Dkt. #1-2, pp. 7-8; Dkt. #12, p. 2]. The Loan
5 from Lender to Borrower is evidenced by a promissory note (the "Note"). [Id.] According
6 to both Plaintiff and Defendant, Borrower had applied for the Loan in order to acquire four
7 parcels of real property in Pinal County, Arizona and to pay for certain pre-development
8 costs and expenses. [Id.]

9    In addition, Plaintiff and Defendant mutually agree that in conjunction with the Loan,
10 Defendant and two others executed an unconditional guaranty also dated June 24, 2005 (the
11 "Guaranty"), which guaranteed payment of the amounts owed by Borrower. [Id.] Both
12 Parties also agree that on June 30, 2006, the Loan matured and Borrower defaulted on the
13 Loan by failing to pay the matured balance. [Id., p. 10; Dkt. #12, p. 2].

14    According to the terms of the Loan Agreement, Note, and Guaranty: 1) Borrower is
15 a Nevada limited liability company [Dkt. #1-8, p. 1; Dkt. #1-9, p. 1]; 2) all notices to be sent
16 to Borrower were sent to Las Vegas, Nevada [Dkt. #1-8, pp. 24-25; Dkt. #1-9, pp. 6, 5]; 3)
17 all notices to be sent to Lender were also sent to Las Vegas, Nevada [Id.]; 4) Payments due
18 under the Promissory Note were to be sent to Las Vegas, Nevada [Dkt. #1-9, p. 1]; 5) Nevada
19 law governed the enforcement of the Loan Agreement, Promissory Note, and Guaranty [Dkt.
20 #1-8, p. 25; Dkt. #1-9, p. 4; Dkt. #1-10, p. 5]; 6) Borrower submitted to the personal
21 jurisdiction of the state and federal courts sitting in Clark County, Nevada, and agreed not
22 to bring any lawsuit in any forum other than Clark County, Nevada [Dkt. #1-8, pp. 25-26;
23 Dkt. #1-9, pp. 4-5]; and 7) Promissory Note and Guaranty were executed in Nevada [Dkt.
24 #1-9, p. 1 Dkt. #1-10, p. 8].

25    Plaintiff's claim derives out of an interest acquired in the Loan through a series of
26 assignment and assumption agreements with related entities. [Dkt. #1-2, p. 7; Dkt. #1-3, 1-4,
27 1-5, 1-6, 1-7]. Plaintiff asserts that neither Defendant nor Borrower has since cured the
28 default under the terms of the Loan Agreement, Note, and Guaranty. [Dkt. #1-2, p. 11].

1  Therefore, Plaintiff contends that it is entitled to recover from Defendant all amounts due and
2  owing. [Id.]

3  In response to the Complaint, on October 19, 2007, Defendant moved in this Court
4  for an order dismissing the present case on grounds that the Court lacks personal jurisdiction
5  over Defendant. [Dkt. #12]. Plaintiff filed a Response to the Motion to Dismiss on
6  November 5, 2007. [Dkt. #13]. Defendant filed a reply on November 16, 2007. [Dkt. #14].

**II.     STANDARD OF REVIEW**

To establish personal jurisdiction, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz.R.Civ.P. 4.2(a); Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997). Therefore, the issue before the Court is whether the exercise of jurisdiction over Defendant accords with due process. See Omeluk, 52 F.3d at 269.

Where an evidentiary hearing is not held, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 300 (9th Cir. 1986). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (citing WNS, Inc. v. Farrow, 884 F.2d 200, 2003 (5th Cir. 1989)). However, a court may not assume the truth of allegations in a pleading that are contradicted by affidavit. Data Disc, Inc., v. Systems Tech. Assoc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff is able to meet its prima facie burden, the movant can nevertheless continue

1  to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself.
2  Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064, n.1 (9th Cir. 1990).

## III.  DISCUSSION

Due Process requires that a nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. General jurisdiction exists where a non-resident defendant engages in substantial, continuous or systematic activities within the forum. Perkins v. Benquet Consol. Mining, Co., 342 U.S. 437, 445, 72 S.Ct. 413 (1952). When a defendant's contacts with the forum do not rise to the level required for general jurisdiction, a court may exercise specific jurisdiction over a claim when it arises from the defendant's activities within that forum. Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522 (1991). In the instant case, Plaintiff argues that non-resident Defendant is subject to both general and specific jurisdiction.

### A.  General Jurisdiction

The Court lacks general jurisdiction because Plaintiff has not met the burden of showing that Defendant has "continuous and systematic general business contacts" with the State of Arizona. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d. 404 (1984).

Allegations in a complaint, when contradicted by affidavit, are not enough to confer personal jurisdiction over a nonresident defendant: "facts, not mere allegations, must be the touchstone." Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (C.A.Or. 1967); see also Data Disc, 557 F.2d at 1285 (stating that "[i]f only one side of the conflict was supported by affidavit . . . [the court] may not assume the truth of allegations in a pleading which are contradicted by affidavit").

- 4 -

1    Here, Plaintiff attempts to establish sufficient business contacts for general jurisdiction
2 by alleging in the Complaint that Defendant "has property for sale and/or is advertising
3 property for sale in the State of Arizona." [Dkt. #1-2, p. 6]. However, in a sworn affidavit
4 submitted in support of Defendant's Motion to Dismiss, Sonya Haggerty states that
5 Defendant does not advertise, own real property, manufacture, or sell any products or
6 services in Arizona. [Dkt. #12-2, p. 2]. Therefore, because the affidavit directly conflicts
7 with the allegations in the Complaint, Plaintiff must present evidence establishing facts that
8 would demonstrate general jurisdiction. Taylor, 383 F.2d at 639; Data Disc, 557 F.2d at
9 1285.

10   In the Response to the Motion to Dismiss, Plaintiff does point to content on
11 Defendant's website suggesting that Defendant may have held and/or advertised property for
12 sale in Arizona. Specifically, Plaintiff refers to a personal statement by the former CEO that
13 was posted on the website. [Dkt. #13-2]. It states that "[o]ver the past five years . . .
14 [Defendant] accumulated hundreds of acres surrounding large master planned communities
15 in Las Vegas and Phoenix." [Id., p. 3]. Plaintiff also cites listings of land holdings for sale
16 in Casa Grande and Buckeye, Arizona on Defendant's website. [Dkt. #13-4, 13-5].

17   However, even though the statement on the website may indicate otherwise, it does
18 not prove, that in fact, Defendant owned, purchased, or sold any land in the State of Arizona.
19 In the Reply to Plaintiff's Response, Defendant establishes by affidavit that it does not own
20 any of the properties listed on its website, have any agreement with the owners of the
21 properties to list or sell the properties, or receive any commissions from the sale of those
22 properties. [Dkt. #14-2, p. 2]. The Court finds that more than a unsworn statement posted
23 on Defendant's website is necessary to rebut facts stated in a sworn affidavit, which Plaintiff
24 has not provided here. Taylor, 383 F.2d at 639; Data Disc, 557 F.2d at 1285. Therefore,
25 Plaintiff still has not established facts demonstrating contacts with Arizona that establish
26 general jurisdiction. Id.

27   The affidavit does state that Defendant is a member of a number of limited liability
28 companies, and that these companies purchased and own real property in Arizona. [Dkt.

- 5 -

1  #14-2, p. 2]. However, the fact that Defendant is a member of a limited liability company
2  that owns property in Arizona is not sufficient in itself to subject Defendant to personal
3  jurisdiction. See Schaeffer v. Heitner, 433 U.S. 186, 213-214 (1977) (holding that personal
4  jurisdiction over the business entity did not necessarily extend to its officers); C. Bishop &
5  D. Kleinberger, Limited Liability Companies: Tax and Business Law Current Through 2006
6  (available at 1998 WL 1169401), § 6.08 (2006) (stating "the fact that the forum state has
7  jurisdiction over the foreign limited liability company does not mean that jurisdiction extends
8  to the limited liability company's members").

9       In addition, the fact that there is a listing of Arizona properties for sale on Defendant's
10 website is not sufficient to subject Defendant to personal jurisdiction. The "likelihood that
11 personal jurisdiction can be constitutionally exercised is directly proportionate to the nature
12 and quality of commercial activity that an entity conducts over the Internet." Cybersell, Inc.
13 v. Cybersell Inc., 130 F.3d 414, 419 (9th Cir. 1997) (holding that a Florida website advertiser
14 was not subject to personal jurisdiction just because its website was accessible from
15 Arizona).

16      Here, like in Cybersell where no sales occurred or income was earned on the internet,
17 the website listings that Plaintiff refers to are entirely passive, providing only "information
18 regarding numerous properties located in Arizona and Nevada." [Dkt. # 14-2, p. 2]. There
19 is no evidence that Defendant sought or achieved any part of its business in Arizona through
20 the website because, as discussed previously, Defendant does not own or receive
21 commissions off the sale of any of the listed properties. [Id.] Like in Cybersell, nothing
22 indicates that there was any commercial activity on Defendant's website that is significant
23 enough for the exercise of general personal jurisdiction.

24
25
26
27
28

Therefore, the Court finds that general jurisdiction does not exist because Plaintiff has not offered evidence establishing facts that would show "continuous and systematic general business contacts" with the state. Helicopteros, 466 U.S. at 416.

**B. Specific Jurisdiction**

The Court lacks specific jurisdiction in the present case because Defendant has not made deliberate contact with the forum state that relates to the cause of action, and because exercise of specific jurisdiction would not be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct 2174, 2182, 85 L.Ed.2d 528 (1985). In determining specific jurisdiction, the Court uses the Ninth Circuit's three-prong test to evaluate the nature and quality of Defendant's contacts for purposes of specific jurisdiction. Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1485 (9th Cir. 1993); Federal Deposit Ins. Corp. v. British-American Ins. Co., 828 F.2d 1439, 1442 (9th Cir. 1987). The test provides that:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id.

Plaintiff has not shown that Defendant purposefully directed any activities or consummated any transaction with the State of Arizona. As a result, Plaintiff also fails to demonstrate that its claim arises out of or relates to any Arizona-related activities. In the instant case, none of the parties involved are Arizona entities: Defendant, Borrower, and Lender are all Nevada companies and Plaintiff is a Delaware limited liability company. [Dkt. #12, pp. 5-6]. In addition, the Note and Guaranty were executed in Nevada and according to their terms, are governed by Nevada law. [Id., p. 3]. One of the provisions of the Loan Agreement even states that Borrower "submits to personal jurisdiction in the State of Nevada . . . [and] agrees that it will not bring any action, suit, or proceeding in any forum other than

1  Clark County, Nevada." [Dkt. 1-8, p. 25]. The evidence here indicates that all activities took
2  place in, and were directed at the State of Nevada, not Arizona. Therefore, the Court finds
3  that Defendant did not "purposefully avail[] itself of the privilege of conducting activities
4  within" the State of Arizona such that it would "reasonably anticipate being haled into
5  court." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567
6  (1980).

7  Citing Hamada v. Valley National Bank, Plaintiff claims that Defendant's execution
8  of the Guaranty was an act, sufficient in and of itself, to exercise specific jurisdiction. 27
9  Ariz. App. 433, 555 P.2d 1121 (1976) (holding that the execution of a letter in Utah which
10 the non-resident defendant knew was going to be used in a transaction in Arizona, provided
11 sufficient minimal contacts to exercise jurisdiction). Plaintiff argues that like in Hamada,
12 even though the Guaranty was executed outside of Arizona, Defendant "knew that the
13 purpose of the loan, which it was guaranteeing, was for the purchase of real property in
14 Arizona." [Dkt. #13, p. 6]. Therefore, Plaintiff asserts that Defendant's execution of the
15 Guaranty was a purposeful and deliberate action directed towards the State of Arizona from
16 which the present claim arises.

17 However, the Court finds that Hamada is distinguishable from the present case. In
18 Hamada, an Arizona bank made a loan to an out-of-state borrower. Hamada, 27 Ariz. App.
19 at 434. In connection with the loan, the out-of-state defendant executed an agreement to buy
20 back shares from the Arizona bank that was used by the borrower to secure the loan. Id.
21 Here, the transaction at issue is a loan made by a group of investors, using a Nevada
22 company as its attorney-in-fact, to a Nevada borrower. [Dkt. #12, p. 5]. Unlike in Hamada
23 where the obligation involved the purchase of stock from an Arizona bank, the obligation in
24 the present case is the payment of a loan between two non-Arizonan parties. In addition,
25 Plaintiff's claim here does not arise out of the purchase of real property as Plaintiff suggests.
26 Plaintiff's claim arises out of the loan for which the land acts as collateral. Therefore, in
27 executing the Guaranty, Defendant did not perform an act or consummate any transaction
28

with the State of Arizona that would establish sufficient minimal contacts to exercise specific jurisdiction.

Lastly, exercise of specific jurisdiction in the instant case would offend the "traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316. In determining reasonableness, the Court must balance:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Core-Vent Corp., 11 F.3d at 1487-1488.

First, Defendant has not purposefully interjected itself into Arizona's affairs. The "smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Id. at 1488. As previously stated, all evidence in this case indicates that any activity by Defendant was directed towards the State of Nevada rather than Arizona. See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1198 (9th Cir. 1988) (stating that "purposeful interjection is analogous to the purposeful direction analysis"). Therefore, the first factor weighs heavily against the reasonableness of exercising jurisdiction.

Second, defending the instant action in an Arizona court may place a slight burden on Defendant. The burden in defending may be particularly great when the defendant has no ongoing connection to or relationship with the forum state. Core-Vent, 11 F.3d at 1488 (stating that "defending a lawsuit in a foreign country can impose a substantial burden on a nonresident alien"). Here, Defendant argues that defending the instant action in Arizona would be considerably burdensome because it had not "purposefully interjected itself into Arizona." [Dkt. #12, p. 6]. However, "modern advances in communications and transportation have significantly reduced the burden" of litigating in other forums. Sinatra, 854 F.2d at 1199. Unlike in Sinatra where the alternative forum to California was

Switzerland, the alternative forum suggested by Defendant here is Nevada, which neighbors the State of Arizona. While Arizona may not be the most efficient forum to adjudicate the present case because as Defendant points out, "witnesses and documents relating to the Guaranty are located in Nevada." [Dkt. #12, p. 6]. The burden here to defend the action in Arizona should not be "so great as to constitute deprivation of due process." Sinatra, 854 F.2d at 1199. Therefore, the second factor has no bearing on the determination of the reasonableness in exercising jurisdiction.

Third, there is no conflict of sovereignty with Defendant's state. "The conflict with the sovereignty of the defendant's state is not a very significant factor in cases involving only U.S. citizens; conflicting policies between states are settled through choice of law analysis, not through loss of jurisdiction." Brand v. Menlove Dodge, 796 F.2d 1070, 1076 n.5 (9th Cir. 1986). While the Loan Agreement, Note, and Guaranty are governed by Nevada law in the instant action, the choice-of-law provision is by no means dispositive of the forum. [Dkt. #1-8, 1-9, 1-10]; see Burger King, 471 U.S. at 482 (stating that a choice of law provision by itself is insufficient to confer jurisdiction, but should be considered in combination with other factors to determine purposeful connection with the forum). Therefore, in determining the reasonableness of exercising jurisdiction, factor three also has no bearing on the analysis.

Fourth, the State's interest in adjudicating the dispute is very slight, if at all. A state's interest in providing effective means of redress is relatively weak when both parties are non-residents. Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 118-119, 107 S.Ct. 1026, 1035 (1986) (holding that exercise of personal jurisdiction over a Japanese manufacturer would be unreasonable and unfair with respect to Taiwanese manufacturer's indemnification claim). Here, Plaintiff is a Delaware limited liability company, and Defendant, Borrower, and Lender are all Nevada companies. [Dkt. #12, pp. 5-6]. In fact, none of the involved parties are Arizona entities. [Id.] Furthermore, none of the activities from which the Breach of Contract/Guaranty claim derives, occurred in Arizona. Therefore, the reasonableness of exercising jurisdiction weighs against the Plaintiff with respect to the fourth factor.

1    Fifth, Arizona is likely not the most efficient forum for judicial resolution of the
2 present case. "The site where the events in question took place or where most of the
3 evidence is located usually will be the most efficient forum." Brand v. Menlove Dodge, 796
4 F.2d 1070 (9th Cir. 1986). As established earlier, the Loan Agreement, Note, and Guaranty
5 were not executed in Arizona. [Dkt. #12, p. 5]. Rather, all activities took place in and were
6 directed towards Nevada. In addition, any witnesses and documents related to the present
7 claim are likely located in Nevada and not in Arizona. [Id.] Therefore, efficiency concerns
8 weigh in favor of the Defendant in regard to the reasonableness of exercising jurisdiction.

9    Sixth, the importance of the forum to Plaintiff's interest in convenient and effective
10 relief are likely minimal. Even though maintenance of a suit may be inconvenient outside
11 of the plaintiff's chosen forum, the plaintiff must show that his claim cannot be remedied in
12 an alternative forum. See Sinatra, 854 F.2d at 1200 (stating that even though the "location
13 of the evidence and witnesses argues for the maintenance of the suit" in the chosen forum,
14 "this factor does not necessarily weigh in favor" of the forum state without "further proof").
15 Plaintiff in the instant case is a Delaware limited liability company and has failed to
16 demonstrate that its claim cannot be effectively remedied outside the State of Arizona, or that
17 to do so would be an inconvenience or costly. In addition, as stated above, any evidence
18 regarding the instant action is likely to be in Nevada and not Arizona. [Dkt. #12, p. 6]. Thus
19 in balancing the sixth factor, the reasonableness of exercising specific jurisdiction weighs
20 against the Plaintiff.

21    Lastly, the State of Nevada exists as an alternative forum. The party asserting
22 jurisdiction "bears the burden of proving the unavailability of an alternative forum," which
23 Plaintiff has not done here. Core- Vent Corp., 11 F.3d at 1490. The evidence also shows
24 that Defendant has "continuous and systematic general business contacts" with State of
25 Nevada and not Arizona, thereby making Nevada a more suitable forum. Helicopteros, 466
26 U.S. at 416. Therefore, the last factor also weighs heavily against the reasonableness of the
27 Court exercising personal jurisdiction in the present case.
28

In balancing the factors above, this Court finds it unreasonable to exercise specific jurisdiction over the non-resident Defendant. Therefore, the Court also finds that Plaintiff fails to meet the requirements of the three-prong test set forth in Core-Vent that are necessary to establish specific jurisdiction. 11 F.3d at 1485.

**Accordingly**,

**IT IS HEREBY ORDERED** granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Dkt. #12)

DATED this 25th day of July, 2008.

_____
Mary H. Murgula
United States District Judge